IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00601-CMA-KLM

MICHAEL G. MURPHY,

    Plaintiff,

v.

AARON'S, INC., a Georgia corporation,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Complaint** [#12][1] (the "Motion"). Plaintiff filed a Response [#20] in opposition to the Motion, and Defendant filed a Reply [#25]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#12] be **GRANTED in part and DENIED in part**.

**I. Background**

Plaintiff, Michael G. Murphy ("Plaintiff") is a Colorado resident who uses a wheelchair for mobility. *Compl.* [#1] ¶¶ 2, 20. Defendant is a Georgia corporation that "operates a

---

[1] "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

-1-

lease-to-own business which offers furniture, electronics, and appliances to consumers pursuant to lease-to-own agreements." *Id.* ¶ 21. Plaintiff has visited Defendant's facility at 8455 North Pecos Street, Federal Heights, Colorado, and alleges that the property does not comply with the Americans with Disabilities Act ("ADA") and its implementing regulations. *Compl.* [#1] ¶ 1. Specifically, Plaintiff alleges that he has experienced "unnecessary difficulty and risk due to a protruding curb ramp in excess of applicable ADA regulations."[2] *Id.* ¶ 23. Plaintiff further alleges that he "will be deterred from returning to and fully and safely accessing Defendant's facilities . . . so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities." *Id.* ¶ 26. Moreover, based on an investigation by Plaintiff's counsel of multiple locations owned, controlled, and/or operated by Defendant, Plaintiff also alleges that Defendant's policies result in similar violations at its other facilities nationwide. *Id.* ¶ 31. On that basis, Plaintiff also brings a class action on behalf of potential class members who have allegedly been denied equal access to Defendant's facilities across the country. *Id.* ¶ 36. Among his requests for relief, Plaintiff seeks a permanent injunction requiring that: "Defendant change its policies and practices so that the parking and path of travel access barriers at Defendant's facilities do not reoccur[.]" *Id.* ¶ 8(b).

In the Motion [#12], Defendant first moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss this particular request for injunctive relief, which, according to Defendant, seeks an injunction requiring Defendant to "undertake proactive assessment of its facilities to ensure

---

[2] All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

there are no 'parking or path of travel access barriers' at any [of] [its] facilit[ies]." [#12] at 2. Defendant next moves to dismiss or strike Plaintiff's class allegations for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), 12(f), 23(c)(1)(A), and 23(d)(1)(D). *Id.* at 1, 10.

## II. Standard

### A. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

**B.    Fed. R. Civ. P. 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of personal jurisdiction." "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of personal jurisdiction." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (internal quotations and citation omitted). A plaintiff bears the burden of establishing personal jurisdiction, although at the preliminary stages of the litigation this burden is light. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Where a district court does not hold an evidentiary hearing before dismissing the case, the plaintiff "must only make a prima facie showing of personal jurisdiction." *Melea, Ltd. v. Jawer SC*, 511 F.3d 1060, 1065 (10th Cir. 2007). "The plaintiff may meet this burden 'by demonstrating, via affidavit or other written materials, facts that if true would

support jurisdiction over the defendant.'" *Id.* (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), courts accept "as true all well-pled . . . facts alleged in [the] complaint." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted).

To determine whether the Court has personal jurisdiction over a defendant, "the [C]ourt must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)). "Because Colorado's long-arm statute 'confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis.'" *Dudnikov*, 514 F.3d at 1070. Due process requires both that the defendant "purposefully established minimum contacts with the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The minimum contacts standard "may be satisfied by showing general or specific jurisdiction." *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010)). For general jurisdiction, "[t]he paradigm forum for the exercise . . . is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For specific jurisdiction, "the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' [his] activities at residents of the

forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 414 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472).

### III. Analysis

**A.    Injunctive Policy Relief**

The ADA is meant to end "discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). As for public accommodations, Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Specifically, public accommodations violate the ADA if they have architectural barriers when removal is readily achievable, they are not readily accessible by individuals with disabilities, or they lack features that are required in order for the facilities to be readily accessible by individuals with disabilities. 42 U.S.C. §§ 12182(b)(2)(A)(iv), 12183(a)(1)-(2); 28 C.F.R. § 36.211. To state a claim under Title III, Plaintiff must show four elements: that he is (1) disabled within the meaning of the ADA; (2) Defendant is a private entity that owns, leases, or operates the place(s) of public accommodation; (3) Plaintiff was deprived of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; and (4) Defendant failed to make reasonable modifications that would accommodate Plaintiff's disabilities without fundamentally altering the nature of the public accommodation. 42 U.S.C. § 12182(a) & (b); *Civil Rights Educ. & Enf't Ctr. v. Sage Hosp. Resp., LLC*, 222 F. Supp. 3d 934, 956 (D. Colo. 2016).

Here, Defendant does not contend that Plaintiff Murphy has failed to meet any of the four elements above. Nor does Defendant seek to dismiss the claim in its entirety. Rather, it moves to dismiss solely the portion of Plaintiff's claim seeking a permanent injunction requiring that "Defendant change its policies and practices so that the parking and path of travel access barriers at Defendant's facilities do not reoccur." *Compl.* [#1] ¶ 8(b). According to Defendant, this amounts to requiring that Defendant "undertake [a] proactive assessment of its facilities to ensure there are no 'parking or path of travel access barriers' at any of [its] facilit[ies,]" which goes beyond what Title III requires of private entities like Defendant. *Motion* [#12] at 2 (brackets omitted).

As an initial matter, the Court notes that Defendant takes an expansive reading of the injunctive relief Plaintiff seeks. Nowhere in the Complaint does Plaintiff state that Defendant must take a "proactive assessment" of all of its facilities to locate access barriers. Nevertheless, Plaintiff does not dispute Defendant's reading of this requested relief in his Response [#20]. As a result, the Court construes this request for injunctive relief pursuant to Defendant's interpretation, that is, as requiring a proactive assessment, in considering the Motion [#12].

If a public accommodation violates the ADA, § 12188(a)(2) states that courts may grant injunctive relief by requiring that the public accommodation modify its policies to conform with applicable ADA regulations. Specifically,

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. *Where appropriate, injunctive relief shall also include* requiring the provision of an auxiliary aid or service, *modification of a policy*, or provision of alternative methods, to the extent required by this

subchapter.

42 U.S.C. § 12188(a)(2) (2000) (emphasis added).

Defendant acknowledges that policy modification is appropriate at times, but argues that the ADA does not require that Defendant have a policy to search for architectural barriers in the first instance. *Reply* [#25] at 3; *see also Motion* [#12] at 3. Defendant also points to 42 U.S.C. § 12182(b)(2)(A)(iv), which states that public accommodations need only remove barriers when doing so is readily achievable. *Motion* [#12] at 5. Defendant contends that implementing a proactive policy to seek and remove potential architectural barriers is not readily achievable pursuant to 42 U.S.C. § 12181(9), which defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense." *Motion* [#12] at 6. According to Defendant, readily achievable is "circumstance-specific" and "the opposite of . . . a statute that mandates a proactive policy of searching for, finding, and removing barriers." *Id.* Defendant further argues that because the ADA does require compliance policies for governmental operations, the absence of such policy requirements for private entities indicates that "Congress did not mean to require policies of the sort that Plaintiff demands." *Id.* at 7.

Plaintiff, on the other hand, argues that because 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501[3] provide that "[w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy[,]" Defendant must implement the proactive policy. *Response* [#20] at 12. Plaintiff additionally contends that because the Department of Justice requires public accommodations to maintain accessible features, Defendant must

---

[3] Section 36.501 is the Department of Justice's provision on private suits involving public accommodations and shares the same language quoted from 42 U.S.C. § 12188(a)(2).

also implement a proactive policy to maintain accessible features. *Id.* at 12-13; 28 C.F.R. § 36.211.

The Court agrees with Defendant. Even taking Plaintiff's claims as true, the Court cannot grant this relief because the ADA does not require non-governmental public accommodations to implement proactive policies. Granted, the Department of Justice does require public accommodations to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." ADA Maintenance of Accessible Features, 28 C.F.R. § 36.211 (2011). Nowhere, however, does § 36. 211 state that public accommodations must implement a proactive policy. In fact, the Appendix in 28 C.F.R. Pt. 36 states that "[a]lthough the obligation to engage in readily achievable barrier removal is clearly a continuing duty, the Department has declined to establish any independent requirement for an annual assessment or self-evaluation." 28 C.F.R. Pt. 36, App. C (2011). Moreover, the ADA's manual covering public accommodations similarly states that "[t]he Department's regulation does not require public accommodations to conduct a self-evaluation. However, public accommodations are urged to establish procedures for an ongoing assessment of their compliance with the ADA's barrier removal requirements." U.S. Dep't of Justice, ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities III-4.4500. Taken together, it follows that the ADA allows Defendant to make repairs when problems are brought to its attention, rather than requiring it to implement a proactive policy and seek out repairs in the manner that Plaintiff demands.

Nevertheless, Plaintiff contends that such a holding "would run afoul of controlling precedent in this District." *Response* [#20] at 14. Yet, Plaintiff cites only two cases in this District and neither is analogous. *Id.* at 14, 15. He first cites *Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175 (10th Cir. 2003). *Id.* at 10, 14. In *Fisher*, the plaintiffs contested a specific policy of the Oklahoma Health Care Authority that limited prescription medications for the Authority's members. *Fisher* 335 F.3d at 1777. Here, Plaintiff's grievance is centered on a "protruding curb ramp," not a sweeping policy decision. *Compl.* [#1] ¶ 23. Furthermore, *Fisher* was analyzed under Title II of the ADA and not Title III, making the case even less analogous. 335 F.3d at 1180. Plaintiff also cites *Brito v. El Zarco, LLC.*, No. 18-cv-01555-CMA-KMT, 2018 WL 4742539 (D. Colo. Oct. 2, 2018). *Response* [#20] at 14, 15. Yet in *Brito*, policy modification was never mentioned or contested. *See id.* Instead, the Court required the defendant to adjust specific parking aisle ramps and bathroom grab bars. 2018 WL 4742539, at *2. Moreover, *Brito* concerned a default judgment, which was vacated seven days later. *Id.*; *see Brito v. El Zarco, LLC*, 2018 WL 8798648 (D. Colo. Oct. 9, 2018).

Plaintiff then urges the Court to follow *Heinzl v. Cracker Barrel Old Country Stores*, which held that courts could impose an injunction on Cracker Barrel restaurants, requiring it to modify its policies. No. 14-1455, 2016 WL 2347367, at *17 (W.D. Pa. Jan. 27, 2016). However, instead of addressing whether the ADA mandates implementation of a proactive policy, *Cracker Barrel* centered on the restaurant's specific ADA practices. *Id.* at *2-5. In particular, the court examined Cracker Barrel's Unit Assessment process, where facility managers were responsible for identifying and remedying ADA violations. *Id.* at *3. Furthermore, *Cracker Barrel* predated the Third Circuit Court of Appeals's decision in *Mielo*

*v. Steak 'N Shake Operations, Inc.*, which found that a permanent injunction requiring public accommodations to implement a proactive policy was at odds with "the very policy which Congress codified in the text of the ADA." 897 F.3d 467, 478 n.10 (3rd Cir. 2018). Additionally, the *Cracker Barrel* Court directly addressed implementing a proactive policy three years later when *Mielo* was remanded. There, the Court followed the Third Circuit's ruling and held that Title III of the ADA does not require public accommodations to adopt "a policy of identifying potential ADA violations . . . ." *Mielo v. Steak 'N Shake Operations, Inc.*, No. 15-180, 2019 WL 1330836, at *13 (W.D. Pa. Mar. 25, 2019). In *Mielo*, like here, the plaintiff alleged that the defendant's facilities violated various ADA regulations and sought injunctive relief in the form of a proactive policy. *Id.* at *1-2. On that basis, *Mielo* is more analogous than *Cracker Barrel*. Moreover, after reviewing 42 U.S.C. § 12188(a) and 28 C.F.R. §§ 36.211 & 36.501, the court concluded that although public accommodations have a duty to maintain their facilities, the ADA language plainly states that:

> a public accommodation can fulfill these duties by making repairs when it finds problems or when problems are brought to its attention, which is not the same proposition as requiring it to create a policy to inspect for such problems. Plaintiffs' argument fails when they attempt to place the burden to inspect for such potential issues on the public accommodation, a position that is not supported anywhere in the statute or regulations.

*Mielo*, 2019 WL 1330836, at *8.

Based on the foregoing, the Court finds *Mielo* persuasive and agrees with Defendant that the ADA does not entitle Plaintiff to seek injunctive relief in the form of requiring Defendant to implement a proactive policy to search for access barriers. Accordingly, the Court **recommends** that the Motion [#12] be **granted** to the extent that Defendant seeks

to dismiss Plaintiff's request for injunctive relief that "Defendant change its policies and practices so that the parking and path of travel access barriers at Defendant's facilities do not reoccur."

## B. Class Action

Defendant next moves to dismiss the class allegations of the Complaint [#1], arguing that the Court lacks personal jurisdiction over Defendant as to the claims from class members who have not visited its Colorado stores. *Motion* [#12] at 2. Essentially, Defendant is moving to preemptively deny class certification before discovery and before a motion for class certification is filed. As Chief Judge Brimmer of this Court noted, while "'Rule 23 does not preclude a defendant from bringing a 'preemptive motion to deny [class] certification[,]'" courts in the Tenth Circuit "have held motions to strike class allegations to a high standard of proof." *Wornicki v. Brokerpriceopinion.com*, No. 13-cv-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015). Therefore, consistent with other courts in this Circuit, Judge Brimmer held in *Wornicki* that the Court would "only grant defendant[']s motion if [it is] able to show conclusively that plaintiff[] will be unable to establish facts that would make class treatment appropriate." *Id.*

### 1. General Jurisdiction

Defendant contends that in almost every instance, "a company is subject to general jurisdiction only in 'the place of incorporation and principal place of business.'" *Motion* [#12] at 11-12 (citing *Daimler*, 571 U.S. at 137). Plaintiff counters that the Court has general jurisdiction over Defendant because of its continuous and systematic contacts within Colorado. *Response* [#20] at 17. The Court agrees with Defendant. *Daimler* plainly states that for general jurisdiction, in nearly every instance, a corporation's continuous and

-12-

systematic affiliations with the State are limited to its place of incorporation or its principal place of business. *See Daimler* 571 U.S. at 137. Because Defendant is both incorporated and headquartered in Georgia, *see Compl.* ¶ 21, it is subject to general jurisdiction in Georgia, not Colorado.

### 2. Specific Jurisdiction

Defendant next contends that the Court lacks specific jurisdiction over the claims of the actual and potential class members who have not visited its Colorado stores. *Motion* [#12] at 12. Defendant argues that because there is no affiliation between its Colorado facilities and the class members whose claims do or will arise out of Defendant's non-Colorado facilities, "the Court cannot exercise specific jurisdiction over [Defendant] with respect to those class members' claims." *Id.* Plaintiff, on the other hand, argues that the Court has jurisdiction over "out-of-state class members when it provides (1) proper notice of the impending class action, and (2) the opportunity to be heard or to opt out of the class."[4] *Response* [#20] at 19 (citing *DeJulius v. New England Health Care*, 429 F.3d 934,

---

[4] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in her complaint. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). All of the documents cited in this section are referred to in the Request for Judicial Notice in Support of Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint [#20-1] as court documents and public records. Nevertheless, the Court rejects Plaintiff's argument that Defendant is subject to jurisdiction for the out-of-state class members simply because Defendant did not dispute specific jurisdiction over claims centered in Colorado.

943 (10th Cir. 2005)).

At the outset, the Court notes the disconcerting prematurity of this argument, as it appears to be directed towards individuals who currently may be unaware of the litigation at all and who have expressed no intent in joining it. Granted, "courts in this District and around the country have held that '[Fed. R. Civ. P.] 23 does not preclude [a defendant] from bringing a 'preemptive' motion to deny class certification.'" *Cleary v. Whole Foods Mkt. Rocky Mountain/Sw. L.P.*, No. 15-cv-01247-MEH, 2016 WL 7048899, at *1 (D. Colo. Dec. 5, 2016) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009)). Nevertheless, motions to strike class allegations at this stage in the proceedings are "generally disfavored." *Cleary*, 2016 WL 7048899, at *2; *see also Wornicki*, 2015 WL 1403814, at *4 ("[I]n most circumstances, it is appropriate for courts to allow discovery before determining whether class certification is appropriate."). A defendant moving to strike class allegations must "demonstrate from the face of the plaintiff['s] complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiff[] may be able to prove." *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010) (emphasis in original).

With that in mind, Defendant's sole argument against class certification is that the Court lacks jurisdiction over Defendant for the claims of the actual and potential class members who have not visited Defendant's Colorado facilities. *Motion* [#12] at 12. Defendant's argument wholly relies on the U.S. Supreme Court's ruling in *Bristol-Myers Squibb v. Superior Court.*, 137 S. Ct. 1773, 1780 (2017). *Id. Bristol-Myers* involved a mass tort action brought in California state court, involving more than 600 plaintiffs, most of whom were not California residents and whose injuries occurred outside of California. *Bristol-*

*Myers*, 137 S. Ct. at 1777. The Supreme Court determined that California did not have specific jurisdiction over Bristol-Myers for the claims from the out-of-state residents who suffered injuries outside of California. *See id.* at 1783. It reasoned that there must be an affiliation between the forum and the underlying controversy which occurs in the forum State. *Id.* at 1781 (citing *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 919)). As a result, because the out-of-state plaintiffs lacked that affiliation, California did not have specific jurisdiction over those claims. *Id.* Despite the similarities between a mass tort and a class action, the Court declined to "confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789.

Since then, neither this Court, the Tenth Circuit, nor any Court of Appeals has addressed whether *Bristol-Myers* extends to class actions. Some district courts, specifically the Northern District of Illinois, have extended *Bristol-Myers* to class actions on the basis that class actions are not significantly different from mass tort cases given the multitude of individual claims typically involved. *See, e.g., Anderson v. Logitech, Inc.*, No. 17 C 6104, 2018 WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018); *Practice Mgmt. Support Servs., Inc. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840, 862 (N.D. Ill. 2018). However, the majority of courts, including the Western District of Oklahoma, have held otherwise. *See, e.g., Braver v. Northstar Alarm Services, LLC*, 329 F.R.D. 320, 327 (W.D. Okla. 2018); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1369 (N.D. Ga. 2018); *Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342, 1345 (S.D. Fla. 2018). The courts that have declined to extend *Bristol-Myers* in these circumstances have pointed to an essential

difference between class actions and mass tort actions. *See Jones v. Depuy Synthes Products, Inc.*, 330 F.R.D. 298 (N.D. Ala. 2018). In short, they note that each plaintiff in a mass tort action is a real party in interest, whereas the named plaintiff in class actions represents unnamed parties. *Id.* at 311-12. Therefore, those courts have concluded that in class actions, it is the jurisdiction over the named plaintiff that matters, not jurisdiction over the absent parties. *Id.* at 311-12 (administration of class actions would be compromised if courts assessed jurisdiction requirements for each unnamed class member).

The Court agrees with the majority position and declines to extend the holding in *Bristol-Myers* to the class action at issue. Accordingly, Defendant's argument that the Court should preemptively deny class certification merely based on *Bristol-Myers* does not "show conclusively that plaintiff[] will be unable to establish facts that would make class treatment appropriate." *Wornicki*, 2015 WL 1403814, at *4.

Accordingly, the Court **recommends** that the Motion [#12] be **denied** to the extent that it seeks to dismiss the claims of the out-of-state class members for lack of personal jurisdiction.

### IV. Conclusion

The Court respectfully **RECOMMENDS** that the Motion [#12] be **GRANTED in part and DENIED in part,** as follows:

(1) The Motion be **granted in part** to the extent that it seeks to impose an obligation to implement a compliance policy involving an ongoing search for access barriers, and that portion of Plaintiff's claim for injunctive relief be dismissed; and.

(2) The Motion be **denied** to the extent that it seeks to dismiss the claims over the out-of-state class members for lack of personal jurisdiction.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this **Recommendation** to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the **Recommendation** by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 22, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge