**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 19-cv-00601-CMA-KLM

MICHAEL G. MURPHY,

      Plaintiff,

v.

AARON'S, INC., *a Georgia corporation*,

      Defendant.

---

**ORDER AFFIRMING AND ADOPTING THE RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE KRISTEN L. MIX AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

---

This matter is before the Court on review of the Recommendation by United

States Magistrate Judge Kristen L. Mix (Doc. # 31), wherein she recommends that this

Court grant in part Defendant Aaron's, Inc.'s Motion to Dismiss Plaintiff's Complaint

(Doc. # 12). On November 5, 2019, Plaintiff Michael G. Murphy and Defendant both

filed Objections to the Recommendation. (Doc. ## 32, 33.) Defendant responded to the

Plaintiff's Objection on November 19, 2019 (Doc. # 34). For the following reasons, both

objections are overruled, and the Court affirms and adopts the Recommendation.

## I.    <u>BACKGROUND</u>

## A.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Mix provided a thorough recitation of the factual and procedural

background in this case. The Recommendation is incorporated herein by reference, *see*

28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b), and the facts will be repeated only to the extent necessary to address the parties' objections.

Plaintiff Michael G. Murphy ("Plaintiff") is a Colorado resident who has a mobility disability and uses a wheelchair for mobility. (Doc. # 1 at 1, ¶ 2.) Defendant Aaron's, Inc. ("Defendant") is a Georgia corporation that "operates a lease-to-own business which offers furniture, electronics, and appliances to consumers pursuant to lease-to-own agreements." (*Id.* at 5, ¶ 21.) Defendant operates these stores throughout the United States. (*Id.*) Plaintiff alleges that he visited Defendant's store located at 8455 North Pecos Street, Federal Heights, Colorado, "where he experienced unnecessary difficulty and risk due to a protruding curb ramp in" violation of applicable Americans with Disabilities Act ("ADA") regulations. (*Id.* at 6, ¶ 23.) Based on Plaintiff's counsel's investigation of multiple locations owned by Defendant, he also alleges that eight of these nationwide properties similarly were not ADA-compliant. (*Id.* at 7–8, ¶¶ 31(a)–(h).)

On March 1, 2019, Plaintiff filed the instant action and asserted one claim for injunctive relief under Title III of the ADA, including Federal Rule of Civil Procedure 23(b)(2) class allegations on behalf of individuals with disabilities who seek equal access to Defendant's nationwide stores. (*Id.* at 8–11.) Pertinent to the instant Motion to Dismiss, Plaintiff seeks a permanent injunction requiring Defendant to "change its policies and practices so that the parking and path of travel access barriers at Defendant's facilities do not reoccur[.]"[1] (*Id.* at 2, ¶ 8.)

---

[1] In addition, Plaintiff seeks injunctive relief, requiring "Defendant [to] remediate all parking and path of travel access barriers at Defendant's facilities, consistent with the ADA" and permitting

On May 6, 2019, Defendant moved to dismiss two components of Plaintiff's

Complaint—(1) injunctive relief to "undertake proactive assessment of its facilities to

ensure there are no 'parking or path of travel access barriers' at any [of its] facilit[ies],"

(Doc. # 12 at 2); and (2) class allegations under Rule 12(b)(2), 12(f), 23(c)(1)(A), and

23(d)(1)(D), (*id.* at 1, 10). On May 28, 2019, Plaintiff responded to Defendant's Motion

to Dismiss arguing that the ADA affords injunctive relief "requiring Defendant to modify

its policies and practices to ensure its facilities are maintained in compliance with the

ADA's parking and lane of access regulations." (Doc. # 20 at 7, 10–15.) Plaintiff further

contends that this Court has general and specific jurisdiction over Defendant as to

absent non-Colorado class members because the Court has specific jurisdiction over

Defendant as to the claim by Plaintiff, who represents non-Colorado class members,

and that class action requirements provide sufficient due process protections for

Defendant. (*Id.* at 15–21.) Defendant replied on June 11, 2019. (Doc. # 25.)

**B.     THE MAGISTRATE JUDGE'S RECOMMENDATION**

As discussed in greater detail below, on October 22, 2019, Magistrate Judge Mix

issued her Recommendation that the Court grant in part Defendant's Motion to Dismiss.

(Doc. # 31.) As to the first issue, Magistrate Judge Mix agreed with Defendant and

determined that Title III of the ADA "does not require non-governmental public

accommodations to implement proactive policies." (*Id.* at 9.) Specifically, in the absence

of Tenth Circuit case law to the contrary, the Magistrate Judge relied upon the ADA's

---

"Plaintiff's representatives [to] monitor Defendant's facilities to ensure that the injunctive relief
ordered . . . has been implemented and will remain in place." (Doc. # 1 at 2–3, ¶ 8.)

regulatory framework, the Department of Justice's guidance, and the Third Circuit's case law in concluding that the ADA does not require public accommodations to modify or implement policies of "identifying potential ADA violations" and searching for "access barriers." (*Id.* at 11 (quoting *Mielo v. Steak 'N Shake Ops., Inc.*, No. 15-180, 2019 WL 1330836, at *13 (W.D. Pa. Mar. 25, 2019)).) Thus, she recommended that this Court dismiss Plaintiff's claim for injunctive relief requesting Defendant to "change its policies and practices so that the parking and path of travel access barriers at Defendant's facilities do not reoccur." (*Id.* at 11–12 (quoting (Doc. # 1 at 3, ¶ 8)).)

Regarding the second issue, Magistrate Judge Mix determined that, although the Court lacks general jurisdiction over Defendant, it maintains specific jurisdiction over Defendant as to Plaintiff and absent non-Colorado class members' claims against Defendant. (*Id.* at 13–16.) The Magistrate Judge rejected Defendant's reliance on the United States Supreme Court's *Bristol-Myers Squibb Company v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017), decision and followed a majority of district courts in holding that, as long as a federal court has specific jurisdiction over a nonresident defendant as to the named plaintiff in a class action and other Rule 23 requirements are met, a federal court's exercise of jurisdiction over a nonresident defendant as to nonresident class members' claims in a class action does not offend that defendant's due process rights. (*Id.* at 14–16.) As a result, Magistrate Judge Mix recommended that the Court deny Defendant's motion to dismiss or strike Plaintiff's class allegations. (*Id.* at 16.)

On November 5, 2019, Plaintiff filed an Objection to the Recommendation arguing that Magistrate Judge Mix improperly considered "the arguments of defense

4

counsel in the moving papers" and inappropriately relied on Defendant's characterization of Plaintiff's request for injunctive relief. (Doc. # 33 at 3.) Specifically, he suggests that, because Defendant likely has maintenance policies, the ADA permits injunctive relief to require modification of those policies to require Defendant to inspect all properties for ADA compliance. (*Id.* at 3–5.) Defendant responded to Plaintiff's Objection on November 19, 2019. (Doc. # 34.)

That same day, Defendant filed its own Objection to the Recommendation as to the personal jurisdiction issue. (Doc. # 32.) Defendant first argues that this Court lacks specific jurisdiction over Defendant as to absent nonresident class members' claims against Defendant based on non-Colorado stores. (*Id.* at 3–5.) Next, Defendant asserts that the Magistrate Judge erred in distinguishing *Bristol-Myers* and posits that this Court should follow courts that hold *Bristol-Myers* applies to class actions and requires a claim-by-claim and plaintiff-by-plaintiff specific jurisdiction analysis over all class members in a class action. (*Id.* at 10–15.) According to Defendant, because the Court cannot maintain jurisdiction over Defendant as to non-Colorado class members' alleged ADA claims arising from non-Colorado stores, Plaintiff's Complaint is insufficient to support a class action, and as such, Plaintiff's class allegations should be stricken. (*Id.* at 14–15.) Plaintiff did not respond to Defendant's Objection.

## II.     LEGAL STANDARDS

### A.     REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de*

*novo* any part of the magistrate judge's [recommended] disposition that has been

properly objected to." An objection is properly made if it is both timely and specific.

*United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d

1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept,

reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.      RULE 12(B)(6)**

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure

to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties

might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*,

336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall*,

935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).

A court need not accept conclusory allegations without supporting factual

averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Indeed, the complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations omitted). "This pleading standard ensures "that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an adequate defense" and avoids "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

Rule 12(b)(6) also "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). Questions of statutory interpretation are questions of law as the Tenth Circuit has "always considered such questions quintessentially legal in nature." *United States v. McLinn*, 896 F.3d 1152, 1156 (10th Cir. 2018); *see also United States v. Almaraz*, 306 F.3d 1031, 1035 (10th Cir. 2002); *Scanlon White, Inc. v. C.I.R.*, 472 F.3d 1173, 1175 (10th Cir. 2006) ("The interpretation of a federal statute is a question of law[.]").

## C.    RULE 12(B)(2)

Rule 12(b)(2) provides that a party may move to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Although a plaintiff bears the burden of establishing personal jurisdiction, a plaintiff need only make a *prima facie* showing that

personal jurisdiction is proper. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). Courts accept as true all well-pleaded "plausible, non-conclusory, and non-speculative" factual allegations in a complaint. *Dudnikov*, 514 F.3d at 1070 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The *prima facie* showing may be made by submitting affidavits or other written materials with facts that would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

## D.    RULE 12(F)

Rule 23 does not prohibit a defendant from asserting a "preemptive" motion to deny class certification. *Wornicki v. Brokerpriceopinion.com*, No. 13-cv-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009)); *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010); *Clearly v. Whole Foods Mkt. Rocky Mountain/Sw. L.P.*, No. 15-cv-01247-MEH, 2016 WL 7048899, at *2 (D. Colo. Dec. 5, 2016). As such, Rule 12(f) is a permissible vehicle in which to file an early motion to deny class certification. Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

However, courts in the District of Colorado hold Rule 12(f) motions to strike class allegations to a high standard of proof. *Wornicki*, 2015 WL 1403814, at *4 (citing *Francis*, 2010 WL 3733023, at *1.) To prevail on a motion to strike class allegations, a

8

defendant "must demonstrate from the face of plaintiffs' complaint that it would be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Francis*, 2010 WL 3733023, at *1 (quoting *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)) (emphasis in original); *see also Wornicki*, 2015 WL 1403814, at *4 (citing *Chenesky v. N.Y. Life Ins. Co.*, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) ("A motion to strike class allegations is even more disfavored [than motions to strike generally] because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before the plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.") (internal quotations and citations omitted). Courts "should only grant a defendant's motion to strike class allegations if the defendant is "able to show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate." *Wornicki*, 2015 WL 1403814, at *4.

## III.    DISCUSSION

## A.    SCOPE OF PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF

### 1.    Applicable Law

The ADA was "designed 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tennessee v. Lane*, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. § 12101(b)(1)). The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I . . . ; public services, programs, and

activities, which are the subject of Title II;[2] and public accommodations, which are

covered by Title III." *Id.* at 516–17.

Title III of the ADA ("Title III") "prohibits discrimination against the disabled in the

full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line*

*Ltd.*, 545 U.S. 119, 128 (2005). With respect to public accommodations, "no individual

shall be discriminated against on the basis of disability in the full and equal enjoyment of

the goods, services, facilities, privileges, advantages, or accommodations of any place

of public accommodation by any person who owns, leases, (or leases to), or operates a

place of public accommodation." 42 U.S.C. § 12182(a). Specifically, Title III requires

places of public accommodation to "remove architectural barriers . . . in existing facilities

. . . where such removal is readily achievable. *Id.* § 12182(b)(2)(A)(iv). "Readily

achievable" means "easily accomplishable and able to be carried out without much

difficulty or expense." 42 U.S.C. § 12181(9).

To state a claim for discrimination under Title III, a plaintiff must show that (1)

plaintiff is disabled within the meaning of the ADA; (2) defendant is a private entity that

owns, leases, or operates a place of public accommodation; (3) a plaintiff was deprived

of the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation; and (4) defendant failed to

make reasonable modifications that would accommodate plaintiff's disabilities without

---

[2] Specifically, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." *Tennessee v. Lane*, 541 U.S. 509, 513 (2004) (quoting 42 U.S.C. § 12132).

fundamentally altering the nature of the public accommodation. *Civ. Rights & Edu. Ctr. v. Sage Hosp. Resources, LLC*, 222 F. Supp. 3d 934, 956 (D. Colo. 2016) (citing *Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1100 (D. Colo. 2000)).

In the instant case, Defendant challenges only the scope of injunctive relief that is available under Title III. To that point, the scope of injunctive relief turns on statutory construction of Title III, which is a question of law. *Scanlon White, Inc.*, 472 F.3d at 1175. In interpreting Title III, a court's "primary task" is to ascertain "congressional intent, using traditional tools of statutory interpretation." *Izzo v. Wiley*, 620 F.3d 1257, 1260 (10th Cir. 2010) (internal quotation marks omitted). A court's "starting point is the plain language" of the statute and the court "presumes Congress correctly expresses its intent 'in the ordinary meaning of the words it employs.'" *Hamer v. City of Trinidad*, No. 16-cv-02545-NYW, 2020 WL 869818, at *7 (D. Colo. Feb. 21, 2020) (quoting *Wyo. ex rel. Crank v. United States*, 539 F.3d 1236, 1245 (10th Cir. 2008)). When interpreting a statute, a court may also turn to the statute's structure and context, *In re Mallo*, 74 F.3d 1313, 1317 (10th Cir. 2014), as well as its purpose, history, and relationship to other statutes, *see New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1223–24 (10th Cir. 2017). *Hamer*, 2020 WL 8699818, at *7.

42 U.S.C. § 12188 provides that, in the event 42 U.S.C. § 12182(b)(2)(A)(iv) is violated, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of

alternative methods, to the extent required by this subchapter." *See also* 28 C.F.R. §

36.501 (Department of Justice regulation providing same injunctive relief for violation of

ADA regulations). Additionally, Congress authorized the Attorney General, through the

Department of Justice ("DOJ") to promulgate regulations implementing the directives of

Title III. 42 U.S.C. § 12186(a)(3), (b). Among these regulations is the obligation that

places of public accommodation "maintain in operable working condition those features

of facilities and equipment that are required to be readily accessible to and usable by

persons with disabilities[.]" 28 C.F.R. § 36.211.

      2.      <u>Whether Title III of the ADA Permits Proactive Injunctive Relief</u>

      Magistrate Judge Mix concluded that Title III "does not entitle Plaintiff to seek

injunctive relief in the form of requiring Defendant to implement a proactive policy to

search for access barriers." (Doc. # 31 at 11.) Specifically, the Magistrate Judge

explained that, upon considering Title III and accompanying DOJ regulations, including

guidance statements, "the ADA allows Defendant to make repairs when problems are

brought to its attention, rather than requiring it to implement a proactive policy and seek

out repairs in the manner that Plaintiff demands." (*Id.* at 9.)

      Plaintiff argues that 42 U.S.C. § 12188(a)(2) permits injunctive relief requiring

Defendant to modify its policies to require Defendant to inspect all of its facilities for

non-ADA compliant conditions. (Doc. # 20 at 12–13.) He contends that, to the extent

Defendant harbors a maintenance policy in general, under 28 C.F.R. § 36.211, Title III

permits injunctive relief requiring modification of its maintenance policy to reflect its

"ongoing duty" to review their places of public accommodation for ADA compliance. (*Id.*

at 14); *see also* (Doc. # 33 at 4–5). In other words, Plaintiff's main objection is that the Magistrate Judge failed to consider that he requested that Defendant modify an existing policy, not adopt a new one. However, that objection misses the point. The point of Magistrate Judge Mix's recommendation is that Title III does not permit injunctive relief requiring modification or implementation of policies of proactive inspection and correction of undiscovered access barriers. (Doc. # 31 at 6–9); *see also Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165–66 (10th Cir. 1999) (considering Title I of ADA, its regulations, and EEOC guidance for determination of scope of relief as to an accommodation of reassignment under Title I). The Court agrees with the Magistrate Judge's conclusion.

To begin, this Court looks to the text of the statute. *See Wyo. ex rel. Crank*, 539 F.3d at 1245. Pursuant to 42 U.S.C. § 12188, **when** 42 U.S.C. § 12182(b)(2)(A)(iv) is **violated**, Title III permits injunctive relief to rectify such violations, including "in some instances," the "modification of a policy." However, in the instant case, Plaintiff seeks a permanent injunction requiring Defendant to "modify the policies and practices that have created or allowed, and **will create or allow, inaccessibility to affect Defendant's network of facilities**." (Doc. # 1 at 8, ¶ 35 (emphasis added)). Title III of the ADA does not permit the imposition of such broad relief.

First, Title III's available injunctive relief is predicated on a violation of the ADA itself. 42 U.S.C. § 12188. To this point, the ADA permits injunctive relief requiring the Defendant to make repairs when specific problems are brought to its attention, which may include modification of a policy if the policy caused that particular violation. *See id.*;

(Doc. # 31 at 9); *see also Mielo v. Steak 'N Shake Operations, Inc.*, No. 15-180, 2019 WL 1330836, at *10 (W.D. Pa. Mar. 25, 2019) (explaining that public accommodations "can fulfill [28 C.F.R. § 36.211] duties by making repairs when it finds problems or when problems are brought to its attention"). Therefore, the plain and sensible reading[3] of Title III's authorization of injunctive relief for modifying a policy requires such relief to redress the ADA violations giving rise to the action in the first place.

Moreover, despite Plaintiff's argument to the contrary (Doc. # 20 at 12–13), Defendant's Section 36.211 regulatory duty to maintain the operable working condition of features of facilities is limited to maintaining features that are already ADA-compliant so that they remain compliant. 28 C.F.R. § 36.211; *Mielo*, 2019 WL 1330836, at *7; 28 C.F.R. Part 36, App. C ("The obligation to engage in readily achievable barrier removal is a continuing one."); *see also Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 73 Fed. Reg. 34508-01, 34523, 2008 WL 2413721 (June 17, 2008). Indeed, the DOJ clarified the scope of Section 36.211 in explaining that the purpose of a public accommodation's continuing duty to maintain accessible features, such as routes and elevators, is to ensure that these features

---

[3] This construction of Title III and 28 C.F.R. § 36.211 comports with the purpose of the ADA because plaintiffs with disabilities "are better served when restaurants are required to spend their limited financial resources on correcting only the access violations that" plaintiffs with disabilities "have actually brought to the restaurant's attention—rather than requiring those establishments to expend their limited resources in an ongoing search for potential violations that may not exist." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 477 n.10 (3d Cir. 2018). Indeed, the plain language of Title III shows that private places of accommodation are of limited resources and Congress weaved consideration of a public accommodation's financial resources into the statutory calculus for whether an ADA violation must be corrected. *Id.* (citing 42 U.S.C. § 12181(9)).

**remain** accessible. 73 Fed. Reg. 34508-01, at 34523.[4] Unlike Title II, which governs

public entities, Title III's DOJ Guidance recognizes that there are no "explicit regulatory

requirements for periodic self-evaluations[;]" nor does an "independent requirement for

an annual assessment or self-evaluation" exist.[5] 28 C.F.R. Part 36, App. C. Thus, Title

III and its accompanying regulations do not mandate proactive inspection of all

properties, much less permit the Court to impose injunctive relief to require the same.

Finally, Plaintiff's reliance on *Fisher v. Oklahoma Health Care Authority*, 335 F.3d

1175, 1181 (10th Cir. 2003), is misplaced. *Fisher* reflects a proposition with which this

Court has no qualm—that the ADA permits injunctive relief requiring modification of

policies when such policies cause ADA violations. *See id.* at 1181. However, *Fisher* is

not applicable to, much less controlling in, this case because *Fisher* addressed only

whether a **public** entity, the Oklahoma Health Care Authority, operated its Medicaid

---

[4] The DOJ wrote that "[a] common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed." 73 Fed. Reg. 34508-01, at 34523.

[5] Indeed, as part of Title II's accompanying regulations, the DOJ instituted inspection requirements on public entities. *See* 28 C.F.R. §§ 35.105(a) (requiring any public entity to perform a one-time evaluation of its "current services, policies and practices" and modify them as necessary); 35.150(d)(1) (requiring public entities to develop a transition plan setting forth the steps necessary to make structural changes to facilities). Such inspection requirements are noticeably absent in both Title III and its corresponding regulations. Tasked by Congress to promulgate regulations to enforce Title III, that absence signifies the DOJ's deliberate choice not to impose such requirements on Title III entities. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("[W]hen Congress includes a particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presume[s] that Congress intended a difference in meaning."); *Jama v. I.C.E.*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

program in a discriminatory manner that violated Title II's "integration mandate" where the program provided less prescriptions to Medicaid recipients who lived at home rather than nursing homes. *Id.* at 1178–84. *Fisher* says nothing as to whether Title III permits modification of private places of public accommodation's policies requiring proactive inspection of ADA violations. Nor does *Fisher* even address physical aspects of public entities or stand for the proposition that Title II permits injunctive relief requiring public entities to modify policies to proactively investigate whether the public entity is committing any other ADA violations. As such, *Fisher* cannot be read as requiring this Court, pursuant to Title III, to impose injunctive relief mandating a public accommodation to modify its policies so that it must search for and correct all possible ADA violations among all their facilities.

In short, concluding that Title III permits that type of broad injunctive relief would constitute inappropriate judicial legislation. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) ("But this Court does not revise legislation . . . just because the text as written creates an apparent anomaly as to some subject it does not address); *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018) (explaining that courts "cannot rewrite a statute and give it an effect altogether different from that sought by the measure viewed as a whole") (quoting *R.R. Retirement Bd. v. Alton R. Co.*, 295 U.S. 330, 362 (1935)); *Kimbrough v. United States*, 552 U.S. 85, 103 (2007) (explaining that courts should "decline to read any implicit directive into [] congressional silence"); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003) (reasoning that where a statute expressly provides a particular remedy or remedies, a court must

be cautious of reading others into it). Indeed, the Court must "presume that [the]

legislature says in a statute what it means and means in a statute what it says there."

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). And Title III says nothing

about the scope of injunctive relief sought by Plaintiff. Accordingly, the Court adopts

Magistrate Judge Mix's Recommendation and dismisses Plaintiff's claim for proactive

injunctive relief.

**B.     DEFENDANT'S MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Given the "disconcerting prematurity" of a Rule 12(f) motion to strike class

allegations in this District, Magistrate Judge Mix recommended that this Court deny

Defendant's motion to dismiss or strike Plaintiff's class allegations. (Doc. # 31 at 14,

16.) The Magistrate Judge determined that the Court lacks general jurisdiction over

Defendant (*id.* at 12); yet, she concluded that the Court has specific jurisdiction over

Defendant as to class allegations because the Court unquestionably has specific

jurisdiction over Defendant as to the named Plaintiff's claim (*id.* at 14–16). Defendant

disagrees and asserts that the Court must strike Plaintiff's class allegations for want of

both general and specific jurisdiction over Defendant as to potential non-Colorado class

members' claims based upon alleged ADA violations at non-Colorado stores. (Doc. # 32

at 5–13.) Although Defendant purportedly relies on basic tenets of jurisdictional law to

support its argument that this Court must conduct a claim-by-claim and plaintiff-by-

plaintiff analysis of specific jurisdiction (*id.* at 6–9, 13), Defendant also contends that

*Bristol-Myers* makes it clear that these tenets extend to class actions (*id.* at 6–7, 13).

*See also* (Doc. # 12 at 13–15).

However, for the reasons that follow, Defendant's position is untenable and would contravene longstanding principles of equity and justice that permeate class actions and frustrate the judicial efficiency and economy which class actions are intended to achieve.

1.    Relevant Law

As long as a federal district court has specific jurisdiction over a nonresident defendant as to claims asserted by a named plaintiff representing the nationwide class action, assuming class action requirements are met, that court has jurisdiction over the defendant as to absent nonresident class members' claims. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445–46 (7th Cir. 2020) (noting that the "Supreme Court has regularly entertained cases involving nationwide classes where the plaintiff relied on specific, rather than general, personal jurisdiction in the trial court, without any comment about the supposed jurisdiction problem") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011) (recognizing that plaintiffs could maintain nationwide, companywide class action if the class demonstrated that the entire company "operate[d] under a general policy of discrimination" and other Rule 23 requirements were met); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (explaining that Rule 23 does not limit the geographical scope of class actions); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819–20 (N.D. Ill. 2018) (explaining that the pre-*Bristol-Myers* consensus provided that "due process neither precluded nationwide or multistate class actions nor required the absent-class-member-by-absent-class-member jurisdictional inquiry"). Indeed, federal courts in the Tenth Circuit and across the country have entertained nationwide class

18

actions arising under federal law without questioning personal jurisdiction over a nonresident defendant as to nonresident class members' claims. *See Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1208–09, 1213–17 (10th Cir. 2014) (affirming class certification of nationwide class action arising under ADA as to nonresident defendant's 249 country-wide stores); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2005 WL 1648182, at *1–3 (D. Colo. July 13, 2005) (certifying nationwide class action under ADA); *Braver v. Northstar Alarm Servs, LLC*, 329 F.R.D. 320, 327 (N.D. Okla. 2018) (certifying nationwide class action under federal Telephone Consumer Protection Act); *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496, 499, 504 (E.D.N.Y. 2018) (certifying Rule 23(b)(2) class action under ADA across three states).

That the connection between a nonresident defendant and an unnamed nonresident class member is "confined to that [class member's] home state" does not destroy a federal court's personal jurisdiction over a nonresident defendant as to the class. *Mussat*, 953 F.3d at 445. This is so because "[o]nce certified, the class as a whole is the litigating entity, and its affiliation with a forum depends only on the named plaintiffs." *Id.* (citing *Payton v. Cty. of Kane*, 308 F.3d 673, 680–81 (7th Cir. 2002)).

Put simply, when it comes to jurisdictional principles, class actions are treated differently. *See Mussat*, 953 F.3d at 446–47. Indeed, a class action is an exception to the axiomatic rule that "one could not be bound by judgment *in personam* unless one was made fully a party in the traditional sense." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940)); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ("The class-action device

19

was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.") (internal quotations omitted); 2 Newberg on Class Actions, § 1:1 (5th ed. 2019) (hereinafter "Newberg"). And this is due in part to the rigorous enforcement of Rule 23 class certification requirements. *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) ("Because class action litigation remains 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' the requirements of Rule 23 are heavily scrutinized and strictly enforced.") (quoting *Califano*, 442 U.S. at 700–01) (internal citations omitted).

Class and representative actions have always operated as an exception to ordinary litigation. The historic origin and modern evolution of class action lawsuits evince the paradigm shift, from a class action's original requirement that all plaintiffs maintain a direct personal interest in the subject of the litigation to sustain membership in the class, to the modern class action that permits some class members to maintain a less strict jural relationship. *See, e.g., Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-2358-CMA-KLM, 2009 WL 1068744, at *9–10 (D. Colo. Apr. 20, 2009). Recounting this evolution illustrates why federal courts need not separately establish specific personal jurisdiction over a defendant as to each nonresident, absent class member in a class action to maintain jurisdiction over the class.

a.    *Historical Origin of the Class Action*

Class actions grew out of the English common law. *See* Newberg § 1:12. Under the old divided law and chancery court system, English chancery courts developed the "Necessary Parties Rule." *Id.* The Rule mandated the joinder of all interested persons in one suit, so as to avoid multiplicative litigation. *Id.; See* Geoffrey C. Hazard, John L. Gedid & Stephen Sowle, *A Historical Analysis of the Binding Effect of Class Suits,* 146 U. Pa. L. Rev. 1849, 1858–59 (1998). As was the case with many English legal doctrines, the Necessary Parties Rule was incorporated into the United States' legal system. *See* Hazard, Gedid & Sowle, 146 U. Pa. L. Rev. at 1858–59. As early as the 1840s, the Federal Equity Rules, a precursor to the modern Federal Rules of Civil Procedure, had codified the mandatory joinder concept. *See* Newberg § 1:13.

Concomitantly, class actions portray a relic of representational litigation that has long existed in equity. *See* Newberg § 1:1 (citing *Smith v. Swormstedt,* 57 U.S. 288, 302 (1853)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832–33 (1999) (explaining that class actions arise from representative suits "that have been recognized in various forms since the earliest days of English law"). "[C]lass actions as we recognize them today developed as an exception to the formal rigidity of" the Necessary Parties Rules and "the bill of peace, an equitable device for combining multiple suits." *Ortiz*, 527 U.S. at 832. Relying on Justice Story's treatise on Equity Pleadings, the Supreme Court recounted that the exception to the Necessary Parties Rule applied where "the parties [were] very numerous, and though they have or may have separate and distinct interests, [] it [was] impracticable to bring them all before the court." *Smith*, 57 U.S. at

302 (citing J. Story, Commentaries on Equity Pleadings § 97 (J. Gould 10th rev. ed. 1892)). Under this exception, because "few [were] permitted to sue and defend on behalf of the many, by representation," the *Smith* Court cautioned that "care must be taken that persons are brought on fairly representing the interest or right involved, so that it may be fully and honestly tried." *Id.* The Supreme Court articulated:

> Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. **For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained**.

*Id.* at 303 (emphases added). The *Smith* case "illustrate[d] the propriety and fitness" of this exception to the Necessary Parties Rule. *Id.* Given the voluminous amount of parties in an Episcopalian church dispute, including 1,500 complainants and approximately 3,000 defendants, the Supreme Court recognized that, if it applied the Necessary Parties Rule and mandated "all the parties to be brought upon the record, as [was] required in a suit at law," application of the rule would manifestly "amount to a denial of justice." *Id.* at 303. Thus, the Supreme Court invoked the exception to the Necessary Parties Rule and permitted a few individuals on each side to represent the interests of both parties in order to prevent that failure of justice. *Id.*

By 1912, the Equity Rules contained two provisions, Rules 27 (stockholders' bill) and 38 (representative of a class) that allowed absent parties to be bound by a

judgment obtained by a representative member. Newberg § 1:13; *see also Hartford Life Ins. Co. v. Ibs,* 237 U.S. 662 (1915) (group of plaintiffs brought suit against insurer "in their own behalf and on behalf of all others similarly situated"). But "federal courts were not consistent in their application of the equity rules governing representative actions." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 363 (3d Cir. 2015) (citing *Smith*, 57 U.S. at 298; *Trustees v. Greenough*, 105 U.S. 527, 533 (1881) (recognizing that plaintiff had ability to utilize a common fund to pay attorney's fees but making no reference to the basis for a representative suit); Stephen C. Yeazell, <u>From Medieval Group Litigation to the Modern Class Action</u> 219 (1987) (explaining that, although the legitimacy of representative actions "could scarcely be questioned once an authority so eminent as [Justice] Story had recognized it, [] his confusion was reflected in the cases")). Still, in this time period, "it was never suggested that putative class members were required to have standing or that representative actions could not present a proper case or controversy." *Neale*, 794 F.3d at 363.

The first version of the Federal Rules of Civil Procedure containing Rule 23 appeared in the 1930s, upon the merger of law and chancery. Rule 23 was an offshoot of the Equity Rules and the Necessary Parties Rule, but was far more flexible. According to some commentators, the new Rule 23 was adopted as a result of difficulty in joining the increasing numbers of litigants under the older equity rules. *See* Hazard, Gedid & Sowle, 146 U. Pa. L. Rev. at 1878. Rule 23 codified Equity Rules 27 and 38, but substantially restated[6] those rules and expanded the reach of class litigation beyond

---

[6] Prior to Rule 23's original enactment in 1938, Equity Rule 48 provided:

23

the equity courts to allow representative suits, in which a select group of litigants

enforced or defended the rights of a larger class of parties, even if members of the class

had not been joined. *See* Newberg § 1:14. Thus, although equity jurisprudence had

allowed class-like suits in the past, the Federal Rules now allowed, for the first time,

class suits for damages in the United States. *Id.*

Interestingly, early opposition to class actions came largely from prospective

class plaintiffs who resisted the possibility of being bound by a judgment obtained

without their participation in the litigation. *See* Abram Chayes, *Public Law Litigation and*

*the Burger Court,* 96 Harv. L. Rev. 4, 26 (1982). Perhaps because of this resistance, the

early class action rule required a more concrete "jural" relationship between the

proposed class members and the subject of the litigation than do modern class

---

Where the parties on either side are very numerous, and cannot, without manifest inconvenience and oppressive delays in the suit, be all brought before it, the Court in its discretion may dispense with making all of them parties, and may proceed in the suit, having sufficient parties before it to represent all the adverse interest of the plaintiffs and defendants in the suit properly before it. But, in such cases, the decree shall be without prejudice to the rights and claims of all the absent parties.

Newberg § 1:13 (citing Wright and Miller's Federal Practice and Procedure, Civ. § 1751 n.22). Equity Rule 38 revised Equity Rule 48 by removing the last sentence stating that the decree shall not prejudice absent parties. *Id.* The original Rule 23(a) codified Equity Rule 38 and provided that:

[A] representative suit was authorized where the right to enforcement for or against the class was: (1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it; (2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

*Id.* § 1:14 (citing Fed. R. Civ. P. 23(a) (1938)).

actions. *See Ortiz,* 527 U.S. at 823; Stephen C. Yeazell, *Group Litigation and Social Context: Toward a History of the Class Action,* 77 Colum. L. Rev. 866, 877 (1977). Each member of the class had to have an interest in the subject matter before the court, such that any member of the class could proceed in her own right. Chayes, 96 Harv. L. Rev. at 26. But as litigation evolved, the depth of personal interest in the subject of the litigation that a prospective class member needed to have to sustain membership in the class began to erode and the role of the class action began to change.

    *b.*  *The Modern Class Action*

   The most critical step in the evolution of class litigation came in 1966, when the Advisory Committee adopted a substantial revision of the much-maligned original Rule 23 and brought class actions into the modern era. *See Amendments to Rules of Civil Procedure, Supplemental Rules for Certain Admiralty & Maritime Claims Rules of Criminal Procedure,* 39 F.R.D. 69, 97 (1966). The Advisory Committee acknowledged that the rather arcane definitions used in the previous version of Rule 23 and the uncertainty regarding the "proper extent of the judgments in class actions" impeded the usefulness of Rule 23. 39 F.R.D. at 99; *see also Ortiz,* 527 U.S. at 842. Thus, the Committee sought to make the class action rule more "practical" for courts and parties. *Id.* at 99–100. By doing so, it ushered in the era of widespread use of class actions in American courts.

   The new Rule 23 accompanied (and likely helped to precipitate) the paradigm shift towards the use of class actions for so-called "impact litigation." Milton Handler, *The Shift from Substantive to Procedural Innovations in Antitrust Suits—The*

*Twenty–Third Annual Antitrust Review,* 71 Colum. L. Rev. 1, 5–6 (1971) ("The impact [of the 1966 revisions to Rule 23] has been due not so much to the literal text of the new rule as to the broad and far-reaching use to which it has been put by the attorneys representing treble damage claimants."). Substantively, the 1966 revision broadened Rule 23's scope by eliminating the previous rule's requirement of a strict "jural relationship" among putative class members. *See* Newberg § 1:15. The new rule also proved far more flexible from a procedural aspect and, as the American economy and consumer culture grew more widespread, class actions under the revised Rule 23 became an important procedural stick for marginalized plaintiffs to wield against powerful defendants. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quotations and citations omitted).

This modern era usage of Rule 23 permits litigation of a suit involving common questions when there are too many plaintiffs for proper joinder so that plaintiffs may "pool claims which would be uneconomical to litigate individually." *Shutts*, 472 U.S. at 809. There is no question that these modern class actions also serve the goals of judicial efficiency and practicality by making multi-party litigation more expeditious and economical. *Califano,* 442 U.S. at 701 ("[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."); *Gottlieb v. Wiles,* 11 F.3d 1004, 1007 (10th Cir. 1993) ("Rule 23 was intended to promote the

efficient resolution of claims in cases involving multiple parties with similar claims, to eliminate repetitious litigation, and to avoid inconsistent judgments."), *abrogated in part on other grounds by Devlin v. Scardelletti,* 536 U.S. 1 (2002)).

        *c.    Modern Principles Applied to Jurisdiction Analysis in Class Actions*

As a result of this paradigm shift, two key jurisdictional principles have emerged. First, individual class members, aside from named representatives, need not satisfy the "minimum contacts" test in order for a federal district court to exercise personal jurisdiction over a defendant. *Mussat*, 953 F.3d at 448. After all, class actions "are a form of representative litigation," Newberg § 1:1, and a Rule 23(b)(2) class action for injunctive relief is a "pure representational action" in which a class action operates as a "unique species of lawsuit" and "a properly qualified representative may appear in court on behalf of others, whether or not the others would have been entitled to sue on their own in the procedural sense." Diane P. Wood, *Adjudicatory Jurisdiction and Class Actions*, 62 Ind. L. J. 597, 599–600 (1987). In such "pure representational" actions, as long as the plaintiff adequately represents the class, "the decision of the plaintiff representative to bring the action in a particular state is enough to support the jurisdiction of the forum to rule on the claims of the remainder of the class as well." *Id.* at 621 (citing *Smith*, 57 U.S. at 302–03). And in "[p]ure representational actions for injunctive relief," a court's decision to exercise specific jurisdiction over a defendant may rest on "the specific jurisdictional links with the named plaintiff alone[.]" *Id.* at 617.

To guard against violation of a defendant's due process rights, however, Rule 23 imposes strict class certification requirements.[7] *See Mussat*, 953 F.3d at 446–48; *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1332–33 (D. Minn. 2018) ("Rule 23's procedural safeguards ensure that the defendant will be 'presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense.'") (quoting *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1365–66 (N.D. Ga. 2018) (explaining that Rule 23(a) certification requirements "protect the defendant's due process rights")). Indeed, the "rules for class certification support a focus on the named representative for purposes of personal jurisdiction." *Mussat*, 953 F.3d at 448. For example, Rule 23(b)(3)(C) provides that the "desirability or undesirability of concentrating the litigation of the claims in the particular forum" is one matter pertinent to determining whether the predominance requirement is met. *Id.* As Chief Judge Wood observed, the Advisory Committee's Note "to this provision mentions that a court should consider the desirability of the forum 'in contrast to **allowing the claims to be litigated separately in forums to which they would ordinarily be brought**.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3), advisory committee's note to 1966 amendment) (emphasis added). Thus, these provisions recognize that the Federal

---

[7] Rule 23(a) obligates plaintiffs to meet following requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). As to Plaintiff's specific class allegations, Rule 23(b)(2) provides that the Plaintiff must demonstrate that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2); (Doc. # 1 at 9–10.)

Rules of Civil Procedure neither prevent a class action from extending beyond the boundaries of the state where the lead plaintiff brings the case nor "frown[] on nationwide class actions, even in a forum where the defendant is not subject to general jurisdiction." *Id.*

Therefore, as long as a federal district court has specific jurisdiction over a nonresident defendant as to the named plaintiff's claim—and Rule 23 class certification requirements are satisfied—it follows then that the court also has specific jurisdiction over the defendant as to nonresident class members' claims.

2.   <u>Analysis</u>

a.   *General Jurisdiction*

The Court agrees with Defendant and Magistrate Judge Mix that the Court lacks general jurisdiction over Defendant.[8] (Doc. # 31 at 12–13; Doc. # 12 at 11–12.) The Supreme Court has made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there[,]" and that for a corporation, "the paradigm forum for the exercise of general jurisdiction" is a place "in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear Dunlop Tires Ops., S.A., v. Brown*, 564 U.S. 915, 922–26 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] bases for general jurisdiction." *Id.* (internal citations and quotations omitted). Outside of those "paradigm all-purpose forums," a

---

[8] The Court notes that neither party objected to the Magistrate Judge's conclusion that general jurisdiction is lacking.

corporation's "affiliations with the State" must be "so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

In the instant action, Defendant is not at home in Colorado. Defendant is neither incorporated in Colorado nor does it maintain its principle place of business in Colorado. (Doc. # 1 at 21.) Defendant's affiliations with Colorado are limited to operating several stores in Colorado. (*Id.* at 5–7, ¶¶ 21, 23, 31(b).) These affiliations are insufficient to render Defendant at home in Colorado for the purposes of subjecting Defendant to general jurisdiction in Colorado. *Daimler AG*, 571 U.S. at 137–38 (rejecting proposition that forum state may exercise general jurisdiction over corporation that "engage in a substantial, continuous, and systematic course of business" with forum state). Therefore, the Court lacks general jurisdiction over Defendant.

     *b.*  *Specific Personal Jurisdiction*

Defendant objects to the Magistrate Judge's Recommendation on the specific jurisdiction issue for two reasons. First, Defendant contends that, for the purposes of determining whether specific personal jurisdiction exists over Defendant as to non-Colorado class members' claims, class actions are no different than regular actions; and as a result, this Court must conduct a specific jurisdiction analysis based on each claim by each potential non-Colorado class member. (Doc. # 32 at 10–14.) Second, Defendant argues that *Bristol-Myers* makes clear that these basic principles of specific jurisdiction apply to class actions because mass actions are similar to class actions and the federalism concerns that animated *Bristol-Myers* compel dismissal of Plaintiff's class

allegations in the instant case. (Doc. # 12 at 12–15; Doc. # 32 at 6–9.) Both arguments collapse under the weight of history and legal authority accentuating class actions.

> i.   Whether Jurisdictional Principles Apply Differently to Class Actions

Defendant argues that the Court must make a claim-by-claim and class member-by-class member personal jurisdiction inquiry to sustain jurisdiction over the class action because class actions are no different than ordinary actions. (Doc. # 32 at 6–13.) In support of this argument, Defendant asserts that the Supreme Court's *Califano* decision makes clear that "where the district court has jurisdiction over the claim of each individual member of the class, Rule 23 provides a procedure by with the court may exercise that jurisdiction over the various individual claims in a single proceeding." (Doc. # 32 at 6 (citing *Califano*, 442 U.S. at 701).) To this point, Defendant contends that there is no obstacle to extending *Califano* to personal jurisdiction over class actions because the Supreme Court's *Snyder v. Harris*, 394 U.S. 332 (1969) decision provided that there is "no reason to treat [class actions] differently from joined actions[.]" (Doc. # 32 at 12 (citing *Snyder*, 394 U.S. at 337) (emphasis omitted).) Thus, Defendant posits that the Court should reject the proposition that courts apply "different jurisdictional rules for class actions," and, instead, Defendant avers that the Court should apply ordinary jurisdictional rules in the context of class actions. (Doc. # 32 at 13.)

None of these arguments are compelling.

As a preliminary matter, the Court is unconvinced that class actions are the same as other actions for purposes of determining personal jurisdiction. For the reasons set forth in Section III.B.1, *supra*, Defendant's position cannot be squared with centuries of

history and precedent showing that class actions have always operated as an exception

to ordinary litigation. Because the purpose of a class action is to permit congregating

numerous individuals in courts where it was either impossible, impractical, or legally

improper for some individuals to have done so themselves, class actions must be

different for purposes of personal jurisdiction.

Next, despite Defendant's argument to the contrary (Doc. # 32 at 10), the

Supreme Court's *Califano* decision does not apply to the instant case. (Doc. # 32 at 10.)

The *Califano* Court was not addressing personal jurisdiction; rather, it was concerned

with whether each class member satisfied statutory jurisdictional requirements set forth

in § 205(g) of the Social Security Act (the "Act"). 442 U.S. at 701, 703. Under § 205(g),

federal district courts did not have jurisdiction over certain social security claims unless

plaintiffs exhausted a rigorous administrative process. *Id.* at 686–87. The Supreme

Court concluded that the district court had discretion under Rule 23 to certify a

nationwide class action for the litigation of those particular social security claims as long

as the class was composed of only plaintiffs who satisfied the Act's § 205(g)

jurisdictional requirements. *Id.* at 701, 703. In the instant case, this Court has subject

matter jurisdiction over Plaintiff and absent class members' claims because they arise

under federal law—the ADA. *See* 18 U.S.C. § 1331. Unlike the claims at issue in

*Califano*, Congress did not establish an administrative process to ensure compliance

with the ADA's public accommodation provision; instead, Title III authorizes a private

right of action and a right of action for the Attorney General, under §§ 12188(a) and (b).

*See Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1281 (M.D. Fla. 2004). Thus,

because *Califano*'s focus was on statutory jurisdiction under the Act, *Califano* is consistent with the instant case where, assuming Rule 23 certification requirements are met and absent class members have ADA claims, every potential class member will comply with subject matter jurisdictional requirements.

Nor should *Califano* be extended to personal jurisdiction concepts. Importantly, the *Califano* Court rejected the notion that a nationwide class action could not be sustained due to geographical scope itself because neither Rule 23 "limited the geographical scope of a class action that is brought in conformity with" Rule 23, "[n]or is a nationwide class inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Id.* at 702. In fact, the Supreme Court declined to "adopt the extreme position that such a [nationwide] class may never be certified" because "certification of a nationwide class, like most issues arising under Rule 23, is first committed to the "discretion of the district court." *Id.* at 702–03. Thus, *Califano* should not be extended to personal jurisdiction inquiries in class actions because such a claim-by-claim and class member-by-class member analysis would break up nationwide class actions and rob this Court of its discretion to certify such nationwide class actions in the first place.

The Court is also unpersuaded by Defendant's argument that the Supreme Court "specifically rejected the notion that class actions are different" in *Snyder*. (Doc. # 32 at 12.) To support this argument, Defendant cites the *Snyder* Court's statement that "the fact that judgments under class actions fromerly [sic] classified as spurious may now

have the same effect as claims brought under the joinder provisions is certainly no reason to treat them differently from joined actions for purposes of aggregation." 394 U.S. at 337. However, this comparison is limited strictly to the "aggregation principle" that underlies the Supreme Court's diversity jurisdiction jurisprudence. *Id.* at 336–38. The "aggregation principle" provides that the diversity jurisdiction statute does not "confer jurisdiction where the required amount in controversy can be reached by aggregating separate and distinct claims." *Id.* at 338. In line with that principle, *Snyder* held only that a named plaintiff could not aggregate the value of her claim with the value of other absent class members' claims to meet the amount in controversy requirement under the diversity jurisdiction statute. 394 U.S. at 333–36 (citing 28 U.S.C. § 1332). Because the aggregation principle had been applied in joinder actions before Rule 23 was codified, and Rule 23 was silent as to the aggregation principle, the Supreme Court saw no reason to treat class actions differently than joinder actions for purpose of applying the aggregation principle to the "amount in controversy" determination.

Furthermore, Defendant's interpretation of *Snyder* is inconsistent with Supreme Court precedent evincing that the jurisdictional and procedural inquiries, normally applicable to individual party claims, apply differently to class actions. For example, courts need not look to unnamed class members to determine threshold issues required for maintaining jurisdiction over an action. *See Devlin*, 536 U.S. at 9–10 (recognizing that absent class members cannot destroy diversity jurisdiction); *see also Appleton Elec. Co. v. Advance-United Expressways*, 494 F.2d 126, 140 (7th Cir. 1974) (explaining that Rule 23 does not require courts to consider nonnamed class members

for purposes of establishing venue). Instead, courts focus on the named plaintiff to ensure that the court may preside over a live case or controversy that may later become a class action, provided that class certification requirements are met. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (recognizing that to establish standing, the "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong'") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *Exxon Mobil Corp. v. Allapattah Servs, Inc.*, 545 U.S. 546, 549 (2005) (holding that, in diversity cases, as long as at least one named plaintiff satisfies diversity jurisdiction requirements, courts may exercise supplemental jurisdiction over nonnamed class members' claims that do not meet the jurisdictional amount); *Koby v. ARNS Nat'l Servs, Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017) (concluding only named class plaintiffs need to consent to the jurisdiction of a magistrate judge) (collecting cases). At bottom, the focus is on the named plaintiffs in class actions because nonnamed class members are not parties "to the class-action litigation *before the class is certified*." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (quoting *Devlin*, 536 U.S. at 16 n.1 (Scalia, J., dissenting) (emphasis in original).

In sum, if courts can rely on the named representative to determine subject matter jurisdiction without reference to unnamed class members, so, too, can courts rely on the named representative's claim to establish specific jurisdiction over a defendant. *See Exxon*, 545 U.S. at 549; *Devlin*, 536 U.S. at 10; *see also Mussat*, 953 F.3d at 447 ("We see no reason why personal jurisdiction should be treated any differently from

subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so."). Otherwise, requiring a claim-by-claim and plaintiff-by-plaintiff jurisdictional analysis would eviscerate a federal court's jurisdiction in all nationwide class actions unless the named plaintiff originally filed a class action complaint in a state where defendant was subject to the general jurisdiction. *See Mussat*, 953 F.3d at 446 ("[N]ationwide class actions will, as a practical matter, be impossible any time the defendant is not subject to general jurisdiction."); *see also Devlin*, 536 U.S. at 10 (explaining that "rule that nonnamed class members cannot defeat complete diversity is likewise justified by the goals of class action litigation" because "[e]ase of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction"). In other words, applying jurisdictional rules differently to class actions is necessary to preserve the class action itself. Indeed, a result that circumscribes nationwide class actions to forums only where defendants are subject to general jurisdiction is not one achieved by "ordinary jurisdictional rules."

Therefore, the Court rejects Defendant's contention that ordinary jurisdiction rules require this Court to dismiss Plaintiff's class allegations because it lacks jurisdiction over the claims of the absent class members.

ii.      Whether *Bristol-Myers* Applies to Class Actions

Defendant's next argument is that the class allegations should be dismissed because *Bristol-Myers* "further made clear—if there was any doubt—[] that besides

evaluating specific jurisdiction for each claim, a court must also assess it for each plaintiff," including the absent class members. (Doc. # 32 at 6–7; Doc. # 12 at 12–15.) Specifically, Defendant contends that the *Bristol-Myers* Court's specific jurisdiction analysis over a non-California defendant as to nonresident named plaintiffs' claims in a mass tort action should apply to class actions. (Doc. # 32 at 6–7; Doc. # 12 at 13.) Because that specific jurisdiction analysis entailed a focus on a "connection between the forum and the specific claims at issue," Defendant contends that this Court too should similarly focus on a connection between potential non-Colorado class members' claims against Defendant and Colorado when determining whether the Court has specific jurisdiction over Defendant as to the entire class action. (Doc. # 32 at 7 (quoting *Bristol-Myers*, 137 S. Ct. at 1781).) Thus, Defendant posits that, because non-Colorado class members' claims against Defendant arise out of Defendant's contacts with non-Colorado stores, there is an insufficient connection between those claims and Colorado, and as a result, the *Bristol-Myers*' specific jurisdiction inquiry forecloses this Court from exercising jurisdiction over Defendant as to the entire class.

However, Defendant's reliance on *Bristol-Myers* is unavailing. As a preliminary matter, unlike the instant case, *Bristol-Myers* did not involve a federal class action governed by Federal Rule of Civil Procedure 23.[9] Rather, *Bristol-Myers* involved a

---

[9] The prevailing view among district courts is that *Bristol-Myers* does not affect a federal district court's ability to wield specific jurisdiction over a nonresident defendant as to nationwide class action claims as long as the federal district court has specific jurisdiction over defendant as to the named plaintiff's claim. *See Braver v. Northstar Alarm Servs.*, 329 F.R.D. 320, 327 (N.D. Okla. 2018) (certifying nationwide class action under Telephone Consumer Protection Act and rejecting defendant's motion to dismiss on jurisdiction grounds pursuant to *Bristol-Myers*); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1365 (N.D. Ga. 2018) (holding that due process concerns do not foreclose federal court's exercise of personal

California state court's attempt to exercise specific personal jurisdiction over non-

California plaintiffs' tort claims against a non-California pharmaceutical company. In

other words, *Bristol-Myers* addressed only the Fourteenth Amendment's due process

restrictions which limit the "personal jurisdiction of **state** courts." 137 S. Ct.  at 1779

(emphasis added). The Supreme Court held that such an exercise of jurisdiction

violated the defendant's Fourteenth Amendment due process rights because the non-

California plaintiffs could not show a sufficient connection between their claims and

California where these plaintiffs were not prescribed the drug, did not purchase or ingest

the drug, and were not injured by the drug in California. 137 S. Ct. at 1778–79, 1782.

*Bristol-Myers* in no way addressed federal class actions or whether its settled principles

regarding specific jurisdiction extend to federal courts' jurisdiction over nonresident,

nonnamed class members or defendants in class actions. *Id*. at 1784. Thus, the Court

agrees with Justice Sotomayor that the *Bristol-Myers* majority opinion is limited to state

---

jurisdiction over defendant as to named resident plaintiff's claims on behalf of unnamed nonresident plaintiffs); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1332–33 (D. Minn. 2018) (holding that federal court may exercise jurisdiction over defendant as to class action claim of absent plaintiff even when the absent plaintiff may not possess minimum contacts with the forum which would support personal jurisdiction over defendant); *Sloan v. Gen. Motors, LLC*, 287 F. Supp. 3d 840, 858–62 (N.D. Cal. 2018) (holding that *Bristol-Myers* does not preclude a federal court from exercising specific personal jurisdiction over defendant as to nonresident plaintiff's claims arising out of forum state conduct in nationwide putative class action because it imposes only a *de minimis* burden on defendant); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, No. 17-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) (holding that, in a putative class action invoking federal question subject matter jurisdiction, the plaintiff seeking to represent the class is the only plaintiff named in the complaint, and his claims, not the unnamed non-resident members, are relevant to the personal jurisdiction inquiry); *see also In re Takata Airbag Prods. Liability Litig.*, 396 F. Supp. 3d 1101, 1136 (S.D. Fla. 2019) (holding that "*Bristol-Myers* does not require federal courts to analyze personal jurisdiction as to the claims advanced by all the non-Florida putative class members that have been consolidated in MDL proceedings").

courts in that it holds that "a corporation that engages in a nationwide course of conduct cannot be held accountable in a **state court** by a group of injured people unless all of those people were injured in the **forum State**." *Id*. (Sotomayor, J., dissenting).

Furthermore, the Court rejects Defendant's argument that the Supreme Court's *Bristol-Myers* holding "in the mass action context appl[ies] with equal force to nationwide class actions." (Doc. # 12 at 13.) The mass action in *Bristol-Myers* involved consolidation of eight separate actions, brought on behalf of 86 California plaintiffs and 592 plaintiffs from 33 other states, that were filed in various state courts. *Id*. at 1776–78. These actions were consolidated in accordance with Section 404 of the California Rule of Civil Procedure Code, which permitted **individual** plaintiffs to consolidate their **individual** cases when certain Section 404 prerequisites (i.e., the actions that are pending in different courts shared a common question of fact or law) were met prior to the handling of **individual** issues. *Mussat*, 953 F.3d at 446 (quoting Cal. Civ. Proc. Code § 404). Importantly, each *Bristol-Myers* plaintiff was a real party in interest where the plaintiff was named and required to effect service. 137 S. Ct. at 1776–78; *see also Mussat*, 953 F.3d at 447; *Sanchez*, 297 F. Supp. 3d at 1365–66. Thus, the Supreme Court determined that "[w]hat [was] needed---and what [was] missing [for the California state court to exercise personal jurisdiction over the defendant as to non-California plaintiffs' claims], [was] a connection between the forum and the specific claims at issue" by the non-California plaintiffs. *Bristol-Myers*, 137 S. Ct at 1781. However, unlike *Bristol-Myers*, in the instant case, there are absent, nonnamed class members who are not considered parties. *See Mussat*, 953 F.3d at 446–47. Thus, the *Bristol-Myers*

holding as to a mass action formed under California's Code of Civil Procedure does not apply "with equal force" to federal class actions certified under Rule 23.

Defendant's contention that the "federalism concerns that animated *Bristol-Myers* compel its application here" is also unsubstantiated. (Doc. # 12 at 14.) As Justice Sotomayor noted in her *Bristol-Myers* dissent, the majority was concerned with the "territorial limitations on the power of the respective States[.]" 137 S. Ct. at 1788 (Sotomayor, J., dissenting). To be sure, the majority emphasized the importance of the Due Process Clause's restrictions on the personal jurisdiction of **state** courts, the need to protect defendants from the "coercive power of a **State**[,]" and the principle that the "sovereignty of each **State** . . . implie[s] a limitation on the sovereignty of all its sister **States**." *Id.* at 1780 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). "Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.* at 1780–81 (quoting *World-Wide Volkswagen*, 444 U.S. at 294). There is no state court involved in this case. Instead, the instant action involves a federal court's jurisdiction over federal litigation arising under federal law; as a result, concerns related federalism and a state's subjugation of its territorial limits are absent.

At its very core, burdening plaintiffs with the Sisyphean task of establishing specific jurisdiction over Defendant as to **all** class members' claims would vitiate the

purposes imbuing class actions—to "promote the efficient resolution of claims in cases involving multiple parties with similar claims, to eliminate repetitious litigation, and to avoid inconsistent judgments." *Gottlieb*, 11 F.3d at 1007, *abrogated in part on other grounds by Devlin*, 536 U.S. at 6. What is more, applying *Bristol-Myers* to class actions would reinstall the "strict jural relationship" that was removed from Rule 23 and raise a barrier for a band of plaintiffs seeking to "pool claims which would be uneconomical to litigate individually." *Shutts*, 472 U.S. at 809; *see also Amchem Prods., Inc.,* 521 U.S. at 617. Indeed, fusing the *Bristol-Myers* rule into class actions would divest federal courts of specific jurisdiction over nationwide class actions—even where Rule 23 requirements are met—simply because the federal court may not maintain specific jurisdiction over a nonresident defendant as to every single class members' claim as though each class member had brought an individual suit. Centuries of law and precedent confirm that is not how Rule 23 class actions work. Accordingly, the Court declines to apply *Bristol-Myers* to the instant action because to do so would contribute to the erosion of modern class actions where neither Rule 23 nor due process demands so.

In the present action, neither party disputes that the Court has specific personal jurisdiction over Defendant as to Plaintiff's ADA claim arising from Defendant's Colorado store. (Doc. # 1 at 5, ¶ 18; Doc. # 16 at 16, 19; Doc. # 12 at 2; Doc. # 25 at 9.) As set forth above, as long as Plaintiff, the named representative, satisfies class certification requirements, including that Plaintiff will be an adequate representative of the class, the Court is satisfied that its exercise of jurisdiction over Defendant as to non-Colorado class members' claims will comport with due process.

As a final point, the fact that this matter is only at the motion to dismiss stage is of import to the Court's decision to deny the motion to dismiss pursuant to Rule 12(f). *See also Molock v. Whole Foods Mrkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) (holding that court could not strike class allegations under Rule 12 on jurisdictional grounds as to nonnamed class members until the action was certified as a class under Rule 23 because the nonnamed class members are not before the court prior to class certification). Given the Court's finding that it has jurisdiction over Defendant as to Plaintiff's claim, it is far too early to dismiss Plaintiff's class allegations. As such, for purposes of applying Rule 12(f), accepting Plaintiff's allegations as true, the Court finds that it is not impossible for Plaintiff to maintain a Rule 23(b)(2) class action. *See Francis*, 2010 WL 3733023, at *1; *Wornicki*, 2015 WL 1403814, at *4. Accordingly, the Court adopts Magistrate Judge Mix's Recommendation and denies Defendant's Motion to Dismiss and Strike Plaintiff's class allegations.

## IV.     CONCLUSION

Based on the foregoing reasons, the Court ORDERS as follows:

1.     Plaintiff Michael G. Murphy's Objection (Doc. # 33) and Defendant Aaron's, Inc.'s Objection (Doc. # 32) to Recommendation are OVERRULED;

2.     The Recommendation (Doc. # 31) of Magistrate Judge Kristen L. Mix is AFFIRMED AND ADOPTED as an ORDER of this Court; and

3.     Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. # 12) is

GRANTED IN PART AND DENIED IN PART. Specifically, Plaintiff's claim for

prospective injunctive relief is DISMISSED WITH PREJUDICE, and Defendant's Motion

to Dismiss and Strike Class Allegations is DENIED.

DATED:  April 30, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge